## In re ROBERTS.

## SMITHSON v. EMMERSON.

(Circuit Court of Appeals, Seventh Circuit. June 4, 1908. Rehearing Denied October 14, 1908.)

### No. 1,393.

BANKRUPTCY (§ 260*)—ADMINISTRATION OF ESTATE—SALE OF PROPERTY.

An order authorizing the receiver of a bankrupt to sell perishable property, consisting of produce in storage, "at public or private sale within his discretion, at current rates without notice," was broad enough to justify a sale in bulk of all of the property in the hands of a warehouse company after it had been offered in car load lots.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 360; Dec. Dig. § 260.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

This is an appeal by Robert Smithson, a creditor, from a final order of the District Court sitting in bankruptcy, approving the report of the receiver, allowing fees and expenses, decreeing the amount of the Monarch Refrigerating Company's lien on the property of the bankrupt, and decreeing that Smithson had no lien.

On October 5, 1904, Frank E. Roberts filed his voluntary petition and schedules in bankruptcy in the court below, and on the same day, on petition of a creditor, the appellee Emmerson was appointed receiver. The bankrupt Roberts was a wholesale dealer in butter and eggs, having his office in Chicago and his stock stored with various cold-storage warehouses in Chicago and throughout the United States, especially in various Eastern cities, in which stocks warehousemen and others claimed liens for storage and advances. On the 11th day of October the receiver petitioned for authority to sell the various stocks, which were in their nature perishable, and out of the proceeds of sale pay the respective lienholders the amount of their respective claims, without prejudice to the right of any person interested in the estate to question the amount of said claims. Various creditors, including the appellant Smithson and appellee Monarch Refrigerating Company, by stipulation filed in the court below consented to the order which was entered directing the receiver to sell all stock "at public or private sale within his discretion, at current market rates, without notice, and out of the proceeds * * * he shall pay to the several lienholders the prima facie amount of their respective claims" and hold the surplus subject to the further order of the court.

On October 21, 1904, Robert Smithson, the appellant, filed a petition setting up a lien on the property of the bankrupt held in storage by the Monarch Refrigerating Company, claiming a lien to the amount of $30,000, but subject to the lien of the Monarch Refrigerating Company. The petition alleged, among other facts, the terms of the order of sale; that the property in Chicago held by the Monarch Company in storage was sold for $131,500; that out of said sum the receiver paid the Monarch Company $129,757.62; that part of the property sold was poultry for the sum of $4,929.40, upon which the Monarch Company had no lien; that the several liens of the Monarch Company were upon specific car loads and lots of butter and eggs, and the property should have been sold in separate parcels to satisfy the respec-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tive liens, instead of en masse; and praying that in accordance with the terms of the stipulation and consent filed by the creditors, and the order of sale, said sum of $4,929.40 be paid Smithson on his alleged lien. The petition was answered by the Monarch Company, and the testimony was taken by the referee, who reported as a conclusion of law that the Monarch Company had liens to the amount of $126,570.65; that it had no lien as to $4,929.40, proceeds of sale of poultry, and therefore that amount should be refunded to the trustee; and that Smithson had no lien. This report was on hearing approved and confirmed by the court.

All the property on which Smithson claimed a lien was in the actual possession of the Monarch Company as warehousemen; and all the warehouse receipts or warrants representing such property had been deposited by Roberts with the Monarch Company, and the warehouse receipts or warrants, as well as the property represented by them, were in the actual possession of the Monarch Company as collateral security for the payment of a number of notes aggregating $129,757.62 for advances made by the Monarch Company to Roberts.

The instrument on which Smithson bases his lien, after reciting the indebtedness of Roberts to Smithson represented by two promissory notes, proceeds as follows:

"Whereas as security for the payment of the above promissory notes I have this day assigned, transferred and set over to the said Robert Smithson the following named goods and chattels attached hereto marked 'Exhibits A and B' and made a part hereof, but subject however to the rights, claims and liens of the Monarch Refrigerating Company for storage charges and loans made to me thereon.

"Now in default of the payment of said notes or any part thereof at their maturity I do hereby authorize the said Robert Smithson, or his assigns, to sell and dispose of said security or any part thereof at public or private sale in his or their discretion, and in the event of said security or any part thereof depreciating in market value, I do hereby authorize said Robert Smithson or his assigns at his or their option to sell and dispose of said security or any part thereof at any time before or after the maturity of said notes, at either public or private sale, but subject, however, to the rights, claims and liens of said Monarch Refrigerating Company or its assigns, * * * and the proceeds of such sale or sales so made as aforesaid shall after the payment of all expenses and commissions attending said sale or sales be applied on said notes and the balance, if any, after the payment of said notes shall be returned to the undersigned. * * *"

Attached to the instrument, as Exhibits A and B, are lists of butter and eggs described by lot numbers, numbers of cases or packages, and amount advanced or loaned by the Monarch Company to Roberts on each lot.

The facts found by the referee concerning the Smithson claim, which are uncontradicted in the evidence, are as follows:

"A short time prior to the bankruptcy Smithson loaned the bankrupt $20,000; he was liable also on a guaranty of the bankrupt's paper for $10,000 more. On September 1, 1904, the date of the loan of $20,000, the bankrupt executed an instrument reciting the debt and the guarantee, and assigning to him (Smithson) certain of the butter and eggs described in a schedule which were in the Monarch warehouse subject to the claims of the Monarch Refrigerating Company, authorizing him to sell and dispose of the same, and, after repaying himself, turn over the balance, if any, to the bankrupt. As to whether there was a delivery is somewhat doubtful. It was agreed that notice should be given to the warehouse, and the paper was mailed by the bankrupt. By a mistake in addressing, it went to Boston, came back to the bankrupt's office, and was carried on its return by a clerk to the warehouse. The officers of the warehouse, not understanding it, sent for the bankrupt. In the colloquy which ensued the secretary of the warehouse company declined to acknowledge the transfer unless Mr. Smithson would appear and arrange to assume the entire obligations of the bankrupt for which the company held the warehouse receipts. Thereupon the bankrupt pocketed the paper, saying, 'Let it pass,' and left. It seems nothing further was done concerning the transaction till after the bankruptcy."

166 F.—7

Chapter 95, § 1, Rev. St. Ill. 1905 (Hurd), is as follows:

"That no mortgage, trust deed, or other conveyance of personal property having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this act, be deemed a chattel mortgage."

The instrument upon which Smithson bases his lien was not recorded, and, until after the bankruptcy, no notice was given by Smithson to the Monarch Company that he claimed a lien on the goods of which it held the actual possession, as also the actual possession of the warehouse warrants representing such goods.

William H. Barnum, for appellant.

Levy Mayer, for appellees.

Before BAKER and SEAMAN, Circuit Judges, and ANDERSON, District Judge.

PER CURIAM. Appellant Smithson admits that his alleged lien is not good unless possession of the property was actually or constructively delivered to him before the bankruptcy of Roberts intervened. Further admitting that there was no actual delivery, counsel contends that a good constructive delivery of possession to Smithson was consummated by Roberts's delivery of the lien instrument to Smithson, followed by Roberts's notice to the Monarch Refrigerating Company that it should hold the property for Smithson, subject to its own possession and liens. But appellant is not in a position to require us to examine that contention and determine its soundness or unsoundness. No positive and unequivocal notice was given to the Monarch Company that it should hold the property for Smithson, subject to its own possession and liens. When the Monarch Company demurred, Roberts apparently acceded to the Monarch Company's position that its consent was necessary to a valid transfer from Roberts to Smithson, and "pocketed the paper, saying, 'Let it pass,' and left."

It is contended by appellant that the receiver should have sold the butter and eggs separately to satisfy the lien of each collateral note out of the property described in the warehouse receipts to which the note referred. One of the notes held by the Monarch Company for $5,000 was for butter and eggs held in storage by the Monarch Company, without specification of case or car numbers. The evidence sustains the view that this note was given as a pledge in gross of all eggs and butter stored with the Monarch Company. The terms of the order empowering the receiver to "sell at public or private sale within his discretion, at current rates, without notice," to which order the appellant assented, was broad enough to justify a sale in bulk of perishable property, after the receiver had offered the property for sale in car load lots.

The allowance of fees and expenses of the receiver is questioned on the ground that the receiver did not literally follow the order of the court to pay Smithson, as a lienholder, the prima facie amount of his asserted lien out of the proceeds of sale, and on the assumption that

the receiver was guilty of gross misconduct in selling the property in bulk instead of in lots. We conclude that under the circumstances of this case there was no misconduct of the receiver either in selling the property in bulk, or in failing to pay to Smithson money which it would be the duty of the court to order repaid by Smithson to the trustee for distribution to the general creditors.

The decree below is affirmed.